**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD VAUVELLE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROCKROSE DEVELOPMENT, L.L.C.,<br><br>Defendant. | Civil Action No. <u>1:26-cv-00074</u><br><br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Richard Vauvelle ("Plaintiff") brings this Class Action Complaint, on behalf of himself and all others similarly situated, against Defendant Rockrose Development, L.L.C. ("Rockrose" or "Defendant"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to him, which are based on personal knowledge:

### <u>NATURE OF THE CASE</u>

1.      Plaintiff brings this class action against Rockrose for its failure to properly secure and safeguard Plaintiff's and other similarly situated current and former employees' and residents' ("Class Members") sensitive information, including names, social security numbers, taxpayer identification numbers, driver's license numbers, passport numbers, financial account and routing numbers, health insurance information, or online account credentials (collectively personally identifiable information ("PII")).[1]

---

[1] *Notice of Data Security Incident*, Rockrose (Dec. 12, 2025), https://rockrose.com/notice-of-data-security-incident/.

2.    In addition, Plaintiff also brings this class action against Rockrose for its failure to properly secure and safeguard Plaintiff's and Class Members' protected health information ("PHI") including medical information.[2]

3.    PII and PHI are collectively referred to as "Private Information."

4.    Rockrose Development, L.L.C. is a real estate development and management company, responsible for the acquisition, construction, and operation of residential and commercial properties. According to its website, "Rockrose has acquired, developed or repositioned nearly 6 million square feet of office space and approximately 15,000 residential apartments in New York and Washington, DC."[3]

5.    Plaintiff and Class Members are required to provide Defendant with their Private Information and/or the Private Information of their family members. Because of this, Rockrose has a duty to secure, maintain, protect, and safeguard the Private Information that it collects and stores against unauthorized access and disclosure through reasonable and adequate data security measures.

6.    Despite Rockrose's duty to safeguard the Private Information, Plaintiff's and Class Members' Private Information was compromised in a data breach when, on or about July 4, 2025, "unauthorized individuals accessed Rockrose's systems and claim to have acquired confidential information stored in certain of those systems." (the "Data Breach").[4]

---

[2] *Id.*
[3] *History and Philosophy*, Rockrose, https://rockrose.com/history-and-philosophy/ (last accessed January 6, 2026).
[4] *Data Breach Notifications*, Office of the Maine Attorney General.
https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/0e9b1638-ed34-411f-b9d4-5f29a1163313.html (last accessed January 6, 2026).

7.    The Data Breach occurred in part because Rockrose stored Plaintiff's and Class Members' Private Information in an unencrypted, Internet-accessible environment.

8.    After Rockrose discovered the Data Breach in November 2025, it conducted an investigation which "determined that personally identifiable information for some individuals may have been impacted."[5]

9.    Despite learning about the breach in November of 2025, Rockrose waited until December of 2025 to begin notifying impacted individuals of the unauthorized access.[6]

10.    Based on publicly available information, the Private Information impacted by the Data Breach includes a wide swath of highly sensitive information belonging to Rockrose's current and former employees and residents, as well as certain of their family members, including their names, social security numbers, taxpayer identification numbers, driver's license numbers, passport numbers, financial account and routing numbers, health insurance information, medical information, or online account credentials.[7]

11.    As a direct and proximate result of Defendant's failure to implement and follow basic security procedures, Plaintiff's and Class Members' Private Information is now exposed to cybercriminals.

12.    Plaintiff and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, intrusion of their health privacy, and similar forms of criminal mischief, risk which may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

---

[5] *Id.*
[6] *Id.*
[7] *Notice of Data Security Incident*, *supra* n. 1.

13.     Plaintiff, on behalf of himself and all others similarly situated, alleges claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment and declaratory judgment arising from the Data Breach. Plaintiff seeks damages and injunctive relief, including the adoption reasonably sufficient practices to safeguard the Private Information in Defendant's custody to prevent incidents like the Data Breach from reoccurring in the future, and for Defendant to provide identity theft protective services to Plaintiff and Class Members for their lifetimes.

## PARTIES

14.     Plaintiff Richard Vauvelle is an adult, who at all relevant times, was a resident and citizen of the state of New York. Plaintiff received a data breach notice informing him that his Private Information provided to Rockrose was compromised during the Data Breach.

15.     Plaintiff has suffered actual injury from having his Private Information exposed and/or stolen as a result of the Data Breach, including: (a) required mitigation efforts, including researching the Data Breach and needing to monitor his financial statements to ensure his information is not used for identity theft and fraud; (b) damages to and diminution of the value of his Private Information, a form of intangible property that loses value when it falls into the hands of criminals; (c) loss of privacy; and (d) continuous imminent and impending injury raising from increased risk of financial identity theft and fraud.

16.     As a direct and proximate result of the Data Breach, Plaintiff has also received a significant increase in spam calls since the Data Breach. Plaintiff noticed that this was a considerable increase from the amount of spam calls he received before the Data Breach.

17.     As a result of the Data Breach, Plaintiff will continue to be at a substantial and certainly impending risk for fraud and identity theft, and their attendant damages, for years to come.

4

18.     Defendant Rockrose Development L.L.C. is a New York limited liability company with its principal executive office located at 15 East 26th Street, 7th Floor, New York, New York 10010.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class is a citizen of a state different than Defendant.

20.     This Court has personal jurisdiction over Defendant because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendant resides in this District.

21.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendant resides in this District.

## FACTUAL BACKGROUND

22.     Defendant is a real estate development and management company responsible for the acquisition, financing, construction, leasing, and ongoing operation of residential and commercial properties, including overseeing property management, tenant relations, and long-term investment strategies.

23.     Plaintiff and Class Members are and/or were employees and residents (or family members thereof) of Defendant.

24.     As a condition of their association with Defendant, Plaintiff and Class Members directly or indirectly entrusted Rockrose with their sensitive Private Information.

25.     Plaintiff and Class Members value the confidentiality of their Private Information and, accordingly, have taken reasonable steps to maintain the confidentiality of their Private Information.

26.     In turning over their Private Information, Plaintiff and Class Members reasonably expected that their employer and/or property owner/manager would safeguard their highly sensitive information.

27.     By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, Rockrose assumed equitable and legal duties to safeguard Plaintiff's and Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

28.     Despite these duties, Rockrose failed to implement reasonable data security measures to protect Plaintiff's and Class Members' Private Information and ultimately allowed threat actors to breach its computer systems and exfiltrate Plaintiff's and Class Members' Private Information.

THE VALUE OF PRIVATE INFORMATION AND EFFECTS OF UNAUTHORIZED DISCLOSURE

29.     Rockrose understood that the Private Information it collects was highly sensitive and of significant value to those who would use it for wrongful purposes.

30.     Rockrose also knew that a breach of its computer systems, and exposure of the Private Information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised.

31.     These risks are not theoretical; in recent years, numerous high-profile breaches have occurred at business such as Equifax, Facebook, Yahoo, Marriott, Anthem, and many others.

32.     Private Information has considerable value and constitutes an enticing and well-known target to hackers. Hackers can easily sell stolen data as there has been "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[8]

33.     As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identity theft, and medical and financial fraud.[9]

34.     The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities in the U.S. In 2021, there were 4,145 publicly disclosed data breaches, exposing 22 billion records. The United States specifically saw a 10% increase in the total number of data breaches.[10]

35.     Indeed, a 2022 poll of security executives predicted an increase in attacks over the next two years from "social engineering and ransomware" as nation-states and cybercriminals grow more sophisticated. Unfortunately, these preventable causes will largely come from "misconfigurations, human error, poor maintenance, and unknown assets."[11]

---

[8] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/.
[9] *What To Know About Identity Theft*, FTC Consumer Advice (Sept. 2024), https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft.
[10] *2024 Global Threat Intelligence Report*, Flashpoint (Feb. 29, 2024), https://go.flashpoint.io/2024-global-threat-intelligence-report-download.
[11] Chuck Brooks, *Alarming Cyber Statistics For Mid-Year 2022 That You Need to Know*, Forbes (June 3, 2022), https://www.forbes.com/sites/chuckbrooks/2022/06/03/alarming-cyber-statistics-for-mid-year-2022-that-you-need-to-know/?sh=176bb6887864.

36.     In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, in 2017, 2.9 million people reported some form of identity fraud compared to 5.7 million people in 2021.[12]

37.     The ramifications of Rockrose's failure to keep Plaintiff's and Class Members' Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[13]

38.     Even if stolen Private Information does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

---

[12] *Facts + Statistics: Identity theft and cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20, (last accessed January 5, 2026).

[13] *Report to Congressional Requesters, Personal Information, June 2007*, U.S. Gov't Accountability Office, https://www.gao.gov/new.items/d07737.pdf (last accessed January 6, 2026).

39.     The specific types of personal data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and other Class Members especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

40.     **Social Security Numbers**—Unlike credit or debit card numbers in a payment card data breach—which can quickly be frozen and reissued in the aftermath of a breach—unique Social Security Numbers cannot be easily replaced. Even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

41.     Indeed, the Social Security Administration warns that the process of replacing a Social Security is a difficult one that creates other types of problems, and that it will not be a complete remedy for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security Number, you should not be able to use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.[14]

---

[14] *Identify Theft and Your Social Security Numbers*, Social Security Admin. (June 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf.

42.     Social Security Numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit—among other services. Often social security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes social security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

43.     **Passport Numbers**—As explained by Aura, a leading identity theft protection service, "[p]assports are among the most widely accepted forms of identification, making them prime targets for scammers and fraudsters. If scammers steal your passport number, they can impersonate you, create fake travel documents, or even open bank accounts in your name."[15] Indeed, when combined with other PII, such as a name, address, or picture, a "passport number enables scammers to impersonate you, access your online accounts, or target you in sophisticated scams that lead to identity theft."[16]

44.     Moreover, "[u]nlike credit card data or personal Social Security numbers, there are few mechanisms in place to alert consumers that their passport numbers have been stolen and possibly used for fraud" making it difficult to determine if criminals are using a forged or fraudulent passport in an individual's name.[17]

45.     Based on the value to cybercriminals of the PII in its possession, Rockrose knew or should have known the importance of safeguarding the PII entrusted to it and of the foreseeable

---

[15] Yaniv Masjedi, *What Can Scammers Do With Your Passport Number (or a Scan)?*, Aura (Apr. 12, 2023), https://www.aura.com/learn/what-can-someone-do-with-your-passport-number#:~:text =If%20scammers%20steal%20your%20passport,could%20still%20be%20at%20risk.
[16] *Id.*
[17] Kate Fazzini, *Here's how criminals use stolen passport information*, CNBC (July 5, 2019), https://www.cnbc.com/2019/07/05/how-criminals-use-stolen-passport-information.html.

consequences if its data security systems were breached. Rockrose failed, however, to take adequate cyber security measures to prevent the Data Breach from occurring.

**ROCKROSE BREACHED ITS DUTY TO PROTECT PRIVATE INFORMATION**

46.    On or about November 14, 2025, Rockrose became aware of a cybersecurity event.[18]

47.    After becoming aware of the Data Breach, Rockrose launched an investigation into the breach which concluded that certain individuals' personal data may have been exposed on or about July 4, 2025."[19]

48.    According to recent news reports, during the Data Breach, a threat actor gained access to its systems without authorization and obtained certain personal information of current and former employees and residents of Rockrose.[20]

49.    The employee information compromised during the Data Breach includes, at the very least, personal information provided to Rockrose including names, Social Security numbers, taxpayer identification numbers, driver's license numbers, passport numbers, bank account and routing numbers, health insurance information, medical information and online account credentials.[21]

50.    On or around December 12, 2025, nearly five months after the Data Breach began, Rockrose reported the Data Breach to the Office of the Maine Attorney General, indicating the Data Breach compromised the Private Information of 47,392 individuals.[22]

---

[18] *Data Breach Notifications*, *supra* n. 4.
[19] *Id.*
[20] *Rockrose Data Breach Affects 47k People Exposing Social Security Numbers*, ClaimDEPOT (updated Dec. 15, 2025), https://www.claimdepot.com/data-breach/rockrose-development-corp-2025.
[21] *Id.*
[22] *Data Breach Notifications*, *supra* n. 4.

51.     As set forth below, despite this threat, and other known threats, upon information and belief, Rockrose failed to take any action to increase security of the Private Information it held and knew to be highly valuable to cybercriminals.

52.     On or around the time Rockrose notified Maine's Attorney General of the Data Breach, Plaintiff received a notice informing him that his Private Information had been compromised during the Data Breach.

53.     Upon information and belief, Class Members received similar notices informing them that their Private Information was compromised during the Data Breach.

54.     Further, on Defendant's website, it posted certain, limited information regarding the Data Breach.[23]

### What Happened

Rockrose launched an investigation and engaged third-party experts to assist in its investigation.  Through Rockrose's ongoing investigation, Rockrose determined that unauthorized individuals accessed Rockrose's systems and claim to have acquired confidential information stored in certain of those systems.  Rockrose has taken steps to secure its systems.  Since the security incident, we have implemented additional cybersecurity safeguards, and we are working closely with our internal and external experts to further enhance the security of our systems.  Rockrose's investigation determined that certain individuals' personally identifiable information may have been impacted.

55.     The Data Breach occurred as a direct result of Rockrose's failure to implement and follow basic security procedures to protect its current and former employees' and residents' Private Information that it had collected and stored.

### ROCKROSE FAILED TO COMPLY WITH FTC GUIDELINES

56.     Rockrose is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce."

---

[23] *Notice of Data Security Incident*, *supra* n. 1.

The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

57.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[24]

58.     Among other guidance, the FTC recommends the following cybersecurity guidelines for businesses in order to protect sensitive information in their systems: [25]

      a.   Identify all connections to the computers where sensitive information is stored;

      b.   Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks;

      c.   Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business;

      d.   Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine;

      e.   Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks;

      f.   Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet;

---

[24] *Start with Security – A Guide for Business*, United States Federal Trade Comm'n (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.
[25] *Protecting Personal Information: A Guide for Business*, United States Federal Trade Comm'n, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed January 6, 2026).

g.    Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically;

h.    Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day; and

i.    Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

59.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[26]

60.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

61.    Rockrose failed to properly implement basic data security practices. Rockrose's failure to employ reasonable and appropriate measures to protect against unauthorized access to

---

[26] *Id.*

its employees' and residents' PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

62.     Rockrose was at all times fully aware of its obligations to protect the PII of its employees and residents given the reams of PII that it had access to as Plaintiff's and the Class Members' employer and/or property manager/owner. Rockrose was also aware of the significant repercussions that would result from a failure to properly secure the Private Information it maintained.

**ROCKROSE FAILURE TO PREVENT, IDENTIFY, AND TIMELY REPORT THE DATA BREACH**

63.     Rockrose admits that an unauthorized third-party accessed its information technology system.[27]

64.     Rockrose failed to take necessary precautions or employ adequate measures necessary to protect its computer systems against unauthorized access and keep Plaintiff's and Class Members' Private Information secure.

65.     The Private Information that Rockrose allowed to be exposed in the Data Breach is the type of private information that Rockrose knew or should have known would be the target of cyberattacks.

66.     Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[28] Rockrose failed to disclose that its systems and security practices were inadequate to reasonably safeguard individuals' Private Information.

---

[27] *Notice of Data Security Incident, supra* n. 1
[28] *Protecting Personal Information: A Guide for Business*, Fed. Trade Comm'n (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

67.    The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[29] Immediate notification to individuals impacted by a data breach is critical so that those impacted can take measures to protect themselves.

**THE DATA BREACH'S INCLUSION OF PHI IS PARTICULARLY SIGNIFICANT**

68.    With respect to the data breaches implicating PHI, a study found "the majority [70%] of data impacted by healthcare breaches could be leveraged by hackers to commit fraud or identity theft."[30]

69.    "Actors buying and selling PII and PHI from healthcare institutions and providers in underground marketplaces is very common and will almost certainly remain so due to this data's utility in a wide variety of malicious activity ranging from identity theft and financial fraud to crafting of bespoke phishing lures."[31]

70.    The reality is that cybercriminals seek nefarious outcomes from a data breach and "stolen health data can be used to carry out a variety of crimes."[32]

71.    Health information in particular is likely to be used in detrimental ways—by leveraging sensitive personal health details and diagnoses to extort or coerce someone, and serious and long-term identity theft.[33]

---

[29] *Id.*

[30] *70% Of Data Involved In Healthcare Breaches Increases Risk Of Fraud*, DistilINFO (Oct. 3, 2019), https://distilgovhealth.com/2019/10/03/70-of-data-involved-in-healthcare-breaches-increases-risk-of-fraud/.

[31] *Id.*

[32] Andrew Steger, *What Happens to Stolen Healthcare Data?*, HealthTech (Oct. 30, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon.

[33] *Id.*

72.     As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals - they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI records can go from $20 say up to - we've even seen $60 or $70."[34]

73.     The "high value of medical records on the dark web has surpassed that of social security and credit card numbers. These records can sell for up to $1,000 online . . ."[35]

74.     Cybercriminals sell health information at a far higher premium than stand-alone PII. This is because health information enables thieves to go beyond traditional identity theft and obtain medical treatments, purchase prescription drugs, submit false bills to insurance companies, or even undergo surgery under a false identity. The shelf life for this information is also much longer—while individuals can update their credit card numbers, they are less likely to change their health insurance information. When medical identity theft occurs, the associated costs to victims can be exorbitant. According to a 2015 study, at least 65% of medical identity theft victims had to "pay an average of $13,500 to resolve the crime."[36]

75.     As noted above, some of the information that was compromised in the Data Breach included, among other things, "medical information."[37] Accordingly, Plaintiff and Class Members must remain especially vigilant given the highly sensitive nature of the PHI at issue in this Data Breach.

---

[34] *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, IDX, https://www.idx.us/knowledge-center/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat (last accessed January 6, 2026).

[35] Steger, *supra* n. 32.

[36] Justin Klawans, *What is medical identity theft and how can you avoid it?*, The Week (Aug. 2, 2023), https://theweek.com/feature/briefing/1025328/medical-identity-theft-how-to-avoid.

[37] *Notice of Data Security Incident*, *supra* n. 1.

ROCKROSE FAILED TO COMPLY WITH HIPAA'S MANDATES

76.     Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

77.     In addition, Rockrose is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

78.     HIPAA's Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information, while HIPAA's Security Standards for the Protection of Electronic Protected Health Information establishes national security standards for health information that is stored or transmitted electronically.

79.     HIPAA requires "comply[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302. Such health information includes "individually identifiable health information . . . that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

80.     HIPAA's Security Rule requires entities such as Rockrose to, *inter alia*, do the following: (i) ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits; (ii)

protect against any reasonably anticipated threats or hazards to the security or integrity of such information; (iii) protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and (iv) ensure compliance by its workforce.

81.     HIPAA also requires entities such as Rockrose to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Rockrose is required under HIPAA to "[i]implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

82.     Moreover, both HIPAA and HITECH required Rockrose to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

83.     Finally, HIPAA requires an entity to provide notice of a data breach to affected individuals "without unreasonable delay and in no case later than 60 days following discovery of the breach." 45 C.F.R. §§ 164.400-414.

84.     Rockrose was, at all times, aware of the mandates of HIPAA. Despite being aware of these mandates and its concomitant obligations, Rockrose failed to comply with its obligations and protect the PHI of Plaintiff and the Class Members.

85.    Defendant's failure in this regard is especially egregious given that Defendant was fully aware of the breadth and depth of PHI it obtained and stored and the foreseeable consequences that would result from unauthorized disclosure of this information.

**PLAINTIFF AND CLASS MEMBERS SUFFERED DAMAGES**

86.    The ramifications of Rockrose's failure to keep Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

87.    Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives as a result of Defendant's conduct. Further, the value of Plaintiff's and Class Members' Private Information has been diminished by its exposure in the Data Breach.

88.    PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[38]  "Fullz" packages, which includes "extra information about the legitimate credit card owner in case" the scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the dark web.[39]

89.    Plaintiff and Class Members are at substantial increased risk of suffering identity theft and fraud or misuse of their Private Information as a result of the Data Breach. From a recent study, 28% of individuals affected by a data breach become victims of identity fraud—this is a

---

[38] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/.
[39] *Id.*

significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.[40]

90.    Further, Plaintiff and Class Members have incurred and will incur out of pocket costs for protective measures, such as identity theft protection, credit monitoring, credit report fees, credit freeze fees, and similar costs related to the Data Breach.

91.    Besides the monetary damage sustained in the event of identity theft, consumers may have to spend hours trying to resolve identity theft issues. For example, the FTC estimates that it takes consumers an average of 200 hours of work over approximately six months to recover from identity theft.[41]

92.    Plaintiff and Class Members are also at a continued risk because their information remains in Rockrose's systems, which the Data Breach showed are susceptible to compromise and attack and are subject to further attack so long as Rockrose fails to take necessary and appropriate security and training measures to protect the Private Information in its possession.

93.    Plaintiff and Class Members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their Private Information to strangers.

94.    As a result of Rockrose's failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer injuries, including out of pocket expenses; loss

---

[40] Stu Sjouwerman, *28 Percent of Data Breaches Lead to Fraud*, KnowBe4, https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud (last accessed January 6, 2026).

[41] Kathryn Parkman, *How to Report identity Theft*, ConsumerAffairs (Feb. 17, 2022), https://www.consumeraffairs.com/finance/how-to-report-identity-theft.html (last accessed January 6, 2026).

of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable Private Information; the imminent and certainly impeding injury flowing from fraud and identity theft posed by their Private Information being disclosed to unauthorized recipients and cybercriminals; damages to and diminution in value of their Private Information; and continued risk to Plaintiff's and the Class Members' Private Information, which remains in the possession of Defendant and which is subject to further breaches so long as Rockrose fails to undertake appropriate and adequate measures to protect the Private Information entrusted to it.

## **CLASS ALLEGATIONS**

95.     Plaintiff brings this class action on behalf of himself and all other individuals who are similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

96.     Plaintiff seeks to represent a class of persons to be defined as follows:

> All individuals in the United States whose Private Information was compromised in the Data Breach (the "Class").

97.     Excluded from the Class are Rockrose, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

98.     This proposed class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the class definition in an amended pleading or when he moves for class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

99.     **Numerosity:** Plaintiff is informed and believes, and thereon alleges, that there are, at minimum, tens of thousands of members of the Class described above. The exact size of the

Class and the identities of the individual members are identifiable through Defendant's records, including but not limited to the files implicated in the Data Breach, but based on public information, the Class includes approximately 47,392 individuals.

100.    **Commonality:** This action involved questions of law and fact common to the Class. Such common questions include but are not limited to:

        a.    Whether Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

        b.    Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' Private Information, and breached its duties thereby;

        c.    Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct; and

        d.    Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

101.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. The claims of Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class were all employees and residents of Defendant, and each had their Private Information exposed and/or accessed by an unauthorized third-party.

102.    **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained

counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

103.    **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

104.    **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages are common to Plaintiff and each member of the Class. If Defendant breached its duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

105.    **Injunctive Relief:** Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

106.    **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendant's books and records.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

107.    Plaintiff re-alleges the above allegations as if fully set forth herein.

108.    Defendant's employees and residents, including Plaintiff and Class Members, provided their non-public Private Information to Defendant as a condition of their association with Defendant.

109.    Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in securing, safeguarding, storing, and protecting the PII and PHI it collected from them as a condition of obtaining services and/or their employment with Rockrose from being compromised, lost, stolen, accessed and misused by unauthorized parties. This duty includes, among other things, designing, maintaining, overseeing, and testing Defendant's security systems to ensure that PII and PHI in Rockrose's possession was adequately secured and protected.

110.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully disclosed.

111.    Defendant owed a duty of care to Plaintiff and Class Members to provide reasonable security, consistent with industry standards, to ensure that its systems and networks adequately protected their Private Information.

112.    Defendant had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Rockrose with their Private Information as a condition of their association was predicated on the understanding that Rockrose would take adequate security precautions to protect their PII and PHI.

113. By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

114. Plaintiff and members of the Class entrusted Defendant with their PII and PHI with the understanding that Rockrose would safeguard their information.

115. Defendant's conduct also created a foreseeable risk of harm to Plaintiff and Class Members by failing to: (1) secure its systems and exercise adequate oversight of its data security protocols; (2) ensure compliance with industry standard data security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent the Data Breach.

116. Defendant knew, or should have known of, the risks inherent in collecting and storing PII and PHI, the vulnerabilities of its systems, and the importance of adequate security. Defendant should have been aware of numerous, well-publicized data breaches in the months and years preceding the Data Breach.

117. Defendant breached its common law duty to act with reasonable care in collecting and storing the Private Information of its employees and residents, which exists independently from any contractual obligations between the parties. Specifically, Defendant breached its common law, statutory, and other duties to Plaintiff and Class Members in numerous ways, including by:

      a.    failing to adopt reasonable data security measures, practices, and protocols;

      b.    failing to implement data security systems, practices, and protocols sufficient to protect Plaintiff's and Class Members' PII and PHI;

      c.    storing former employees' and residents' PII and PHI longer than reasonably necessary;

     d.    failing to comply with industry-standard data security measures; and

     e.    failing to timely disclose critical information regarding the nature of the Data Breach.

118.    Defendant's failure to implement and maintain adequate data security measures to protect Plaintiff's and Class Members' Private Information created conditions conducive to a foreseeable, intentional criminal act in the form of the Data Breach. Plaintiff and Class Members did not contribute to the Data Breach or the subsequent misuse of their Private Information.

119.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Private Information.

120.    Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breach.

121.    Defendant had and continues to have duties to adequately disclose that the Private Information of Plaintiff and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

122.    Defendant has admitted that the Private Information of Plaintiff and Class Members was wrongfully disclosed to unauthorized third persons as a result of the Data Breach.

123.    Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

124.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have and will suffer damages including, but not limited to: (i) the loss of value of their Private Information and loss of opportunity to determine for themselves how their PII and PHI is used; (ii) the publication and/or theft of their PII and PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (iv) lost opportunity costs associated with addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) time, effort, and expense associated with placing fraud alerts or freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Rockrose fails to undertake appropriate and adequate measures to protect it; and (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised for the rest of their lives.

125.    But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

126.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure

to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

127.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

128.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

129.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

130.    Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

## COUNT II
## NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and the Class)

131.    Plaintiff re-alleges the above allegations as if fully set forth herein.

132.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Defendant or failing to use reasonable measures to protect PII and PHI. Various FTC publications and orders also form the basis of Defendant's duty.

133.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' PII and PHI and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of a data breach involving that PII and PHI.

134.    Plaintiff and Class Members are within the class of persons that Section 5 of the FTC Act is intended to protect.

135.    Moreover, the harm that has occurred is the type of harm that Section 5 of FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

136.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se.*

137.    Furthermore, Defendant is Covered Entities under HIPAA, which sets minimum federal standards for privacy and security of PHI. Pursuant to HIPAA, 42 U.S.C. § 1302d, *et. seq.*, and its implementing regulations, Defendant had a duty to implement and maintain

reasonable and appropriate administrative, technical, and physical safeguards to protect Plaintiff's and the Class Members' electronic PHI.

138.     Specifically, HIPAA required Defendant to: (a) ensure the confidentiality, integrity, and availability of all electronic PHI it creates, receives, maintains, or transmits; (b) identify and protect against reasonably anticipated threats to the security or integrity of the electronic PHI; (c) protect against reasonably anticipated, impermissible uses, or disclosures of the PHI; and (d) ensure compliance by its workforce to satisfy HIPAA's security requirements. 45 C.F.R. § 164.102, *et. seq*.

139.     HIPAA also requires Defendant to provide Plaintiff and Class Members with notice of any breach of their individually identifiable PHI "without unreasonable delay and in no case later than 60 calendar days after discovery of the breach." 45 C.F.R. §§ 164.400-414.

140.     Defendant violated HIPAA by disclosing Plaintiff's and the Class Members' electronic PHI; by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PHI; and by failing to provide Plaintiff and Class Members with notification of the Data Breach without unreasonable delay after its discovery.

141.     Plaintiff and the Class Members are customers within the class of persons HIPAA was intended to protect, they are and/or were employees and residents (or family members thereof) of Defendant.

142.     Moreover, the harm that has occurred is the type of harm that the HIPAA was intended to guard against.

143.     Defendant's violation of HIPAA constitutes negligence *per se*.

144. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

145. Plaintiff re-alleges the above allegations as if fully set forth herein.

146. In connection with obtaining services and/or employment with Defendant, Plaintiff and Class Members entered into implied contracts with Rockrose.

147. Plaintiff and Class Members were required to deliver their Private Information to Defendant as part of the process of obtaining services and/or employment with Defendant.

148. Defendant solicited, offered, and invited Class Members to provide their Private Information in order to obtain services and/or employment at Defendant's. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

149. Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing services and/or employment to Plaintiff and Class Members.

150. When Plaintiff and Class Members provided their PII and PHI to Rockrose, either directly or indirectly, as a pre-condition for obtaining services and/or employment, they entered into implied contracts with Defendant.

151. Pursuant to these implied contracts, in exchange for the consideration and PII and PHI provided by Plaintiff and Class Members, Defendant agreed to, among other things, and Plaintiff and Class Members understood that Rockrose would: (1) provide products and/or services to Plaintiff and Class Members; (2) implement reasonable measures to protect the

security and confidentiality of Plaintiff's and Class Members' PII and PHI; and (3) protect Plaintiff's and Class Members' PII and PHI in compliance with federal and state laws and regulations and industry standards.

152.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

153.    Implicit in the agreement between Plaintiff and Class Members and Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

154.    The protection of PII and PHI was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and Defendant, on the other hand. Indeed, as set forth herein, Defendant recognized its duty to provide adequate data security and ensure the privacy of its employees' and residents' PII and PHI with its practice of providing a privacy policy on its website.

155.    Plaintiff and Class Members performed their obligations under the implied contract when they provided Defendant with their PII and PHI.

156.    Defendant breached its obligations under its implied contracts with Plaintiff and Class Members in failing to implement and maintain reasonable security measures to protect and

secure their PII and PHI, and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class Members' PII and PHI in a manner that complies with applicable laws, regulations, and industry standards

157.    The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

158.    On information and belief, at all relevant times, Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

159.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

160.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

161.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

162.    Importantly, New York law provides that every contract includes good faith and fair dealing between the parties involved.

163.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

164.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that Private Information was compromised as a result of the Data Breach.

165.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of Private Information and storage of other personal information after Defendant knew, or should have known of, the security vulnerabilities of the systems that were exploited in the Data Breach.

166.    Defendant's breach of its obligations of its implied contracts with Plaintiff and Class Members directly resulted in the Data Breach and the injuries that Plaintiff and Class Members have suffered from the Data Breach.

167.    Plaintiff and Class Member suffered by virtue of Defendant's breach of their implied contracts because: (i) they paid for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft - risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII and PHI was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII and PHI has been breached; (v) they were deprived of the value of their PII and PHI, for which there is a well-established national and international market; (vi) they have lost time and incurred expenses, and will incur future costs to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) the have overpaid for the services they received without adequate data security.

168.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

169.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

170.    Plaintiff re-alleges the above allegations as if fully set forth herein.

171.    This count is plead in the alternative to the breach of implied contract count above.

172.    By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Plaintiff and Class Members.

173.    Plaintiff and Class Members conferred a benefit on Defendant, whereby they provided their Private Information to Defendant to obtain services and/or employment.

174.    Defendant prior to and at the time Plaintiff and Class Members entrusted it with their PII and PHI, caused Plaintiff and Class Members to reasonably believe that it would keep that Private Information secure.

175.    The monies Defendant was paid in its ordinary course of business included a premium for Defendant's cybersecurity obligations and were supposed to be used by Defendant, in part, to pay for the administrative and other costs of providing reasonable data security and protection for Plaintiff's and Class Members' Private Information.

176.    Defendant knew that Plaintiff and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to

it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

177.    Defendant failed to disclose facts pertaining to its substandard information systems, or defects and vulnerabilities therein before Plaintiff and Class Members made their decisions to provide Defendant with their Private Information.

178.    Defendant enriched itself by hoarding the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheap, ineffective security measures and diverting those funds to its own personal use. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

179.    Defendant failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members, and, as a result, Defendant was overpaid.

180.    Under principles of equity and good conscience, Defendant should not be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

181.    Plaintiff and Class Members have no adequate remedy at law.

182.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly

increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

183.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

## COUNT V
## DECLARATORY JUDGMENT
### (On Behalf of Plaintiff and the Class)

184.    Plaintiff re-alleges all preceding allegations above as if fully set forth herein.

185.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

186.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' Private Information and whether Rockrose is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Rockrose's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his PII and remains at imminent risk that further compromises of his PII will occur in the future.

187.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

       a.    Rockrose owes a legal duty to secure employees' and residents' Private Information and to timely notify impacted individuals of a data breach under the common law, HIPAA, and various state statutes; and

       b.    Rockrose continues to breach this legal duty by failing to employ reasonable measures to secure Private Information in its possession.

188.     This Court also should issue corresponding prospective injunctive relief requiring Rockrose to employ adequate security protocols consistent with law and industry standards to protect Private Information in Rockrose's data network.

189.     If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Rockrose. The risk of another such breach is real, immediate, and substantial. If another breach at Rockrose occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and he will be forced to bring multiple lawsuits to rectify the same conduct.

190.     The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Rockrose if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Rockrose of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Rockrose has a pre-existing legal obligation to employ such measures.

191.     Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Rockrose, thus

eliminating the additional injuries that would result to Plaintiff, employees and residents whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.      For an Order certifying this action as a class action, appointing Plaintiff as class representative for the Class, and appointing his counsel to represent the Class;

B.      For equitable relief enjoining Rockrose from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII and PHI, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C.      For equitable relief compelling Rockrose to utilize appropriate methods and policies with respect to employee and resident data collection, storage, and safety, and to disclose with specificity the types of PII and PHI compromised as a result of the Data Breach;

D.      For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Rockrose's wrongful conduct;

E.      Ordering Rockrose to pay for not less than ten years of credit monitoring services for Plaintiff and Class Members;

F.      For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G.      For an award of punitive damages, as allowable by law;

H.      For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

I.      Pre- and post-judgment interest on any amounts awarded; and

J.      Such other and further relief as this court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: January 6, 2026                    Respectfully submitted,

                                          **LYNCH CARPENTER, LLP**

                                          */s/ Gary F. Lynch*
                                          Gary F. Lynch (NY 5553854)
                                          1133 Penn Ave, 5th Floor
                                          Pittsburgh, PA 15222
                                          T: 412-322-9243
                                          gary@lcllp.com

                                          Gerald D. Wells, III (*pro hac vice* forthcoming)
                                          Robert J. Gray (*pro hac vice* forthcoming)
                                          1760 Market Street, Suite 600
                                          Philadelphia, PA 19103
                                          T: 267-609-6910
                                          F: 267-609-6955
                                          jerry@lcllp.com

                                          *Attorneys for Plaintiff and the Proposed Class*